and we're all the way across the room, so speak as if you're talking to the back of the classroom. Okay. Thank you. Maybe that, is that, does that help a little bit, the microphone? It's not the microphone, you're keeping, get your voice up strong. Okay. It'll make a stronger argument, too. Okay, thank you. We're here today because the district court denied Mr. Jackson compassionate release without recalculating his guideline range, which would have been seven years lower without the career offender enhancement. The, the language of the compassionate release statute 3582C1A is clear. It tells the court that they have to apply the 3553A factors. And the first one of those steps to, to consider those factors is a calculation of the correct guideline range. Now the Supreme Court has gone, has said in numerous cases, Gall, Molina, Martinez, Rosales, Morales, that the guidelines are the starting point and the benchmark. So your, your argument here is that the error is that the district court was required to recalculate the guidelines? Yes. All right. How do you handle that? Where did you tell the district court that? Well, it, it probably could have been more artfully said. But the argument was that he was no longer a career offender. And I can cite to the JA for where it calculated what his correct guideline range would be. Right. I know the guidelines, there was evidence or argument that if the guidelines were recalculated, there would be a difference. Yeah. My question is, where did you argue this is something you're required to do? Because I'm not sure I find that in the record. Well, it, it wasn't stated that this is something you're required to do. But the, the assumption in every sentencing case is a correct calculation of the guidelines. So the, the appellant didn't say this, this is what you have to do first. This is what you have to do second. But the assumption in, in all these cases is that you will start from the correct range. And here, based on the district court's explanation. So what compassionate release case says that? Well, compassionate release case, this will hopefully be the first case that will say that. In other contexts, in every other context, all sentencing decisions, including under the First Step Act, you assume that you have to start from the correct range. And if you don't, it's automatically prejudicial. That's what. You know, the Supreme Court came down with this decision in Dillon. I don't know if you recognize Dillon. Yes. Dillon, you're, you made the same argument that was made to the Court in Dillon. And that was, you're focusing on criteria for imposing a sentence, which is first, calculate the correct guideline. And under the First Step Act, the Court recognized that you're imposing a new sentence and that you have to go through the process for resentencing. Right. But then it said under this very statute, 3582C, the Court said that's a different function. This function, you do not impose a new sentence and you don't go through that process. What it said is you are modifying or reducing a sentence, and the standard is only to focus on what Congress said with respect to that. It seems to be a controlling decision that controls this outcome. And I didn't see anybody arguing it. I'm trying to see. Dillon was decided in 2010, and it takes this very statute. Well, if you look at the ---- And it distinguishes it from everything you've argued so far, which is, and all those arguments were made, that when you impose a new sentence under the First Step Act, they said it's a new sentence, it's a resentencing. Well, that was what was argued. And the Court said that may be so, but this is under 3582C. And then they said under 3582C, you follow a much more restricted ---- It's more restricted, but it's not nearly as restricted as the C-2, which is ---- There's nothing under there that says they pointed that out to recalculate the sentence. That was the whole issue in Dillon. Well, actually, what the Court said was that there's no language in 3582C1A that tells the Court that they can't recalculate the guideline range, which is what this Court said in Chambers. What made the First Step Act different is both the use of the word impose, which tells you that you're imposing a new sentence, not just reducing it, and also the absence of language telling the Court that it's restricted. Now, that's what made it different than C-2. So now we're in ---- we're looking at C-1A, which is not as thorough possibly as C-1B. So here you're right on the merits. You're going to the merits of your argument. But as a preceding question, if the Court were to conclude that you did not raise the issue that you raise on appeal in the district court, what happens then? Even ---- I mean, the government has not raised plain error, but they've waived that argument. But even on plain error, the calculation of the guideline range is such an essential part of the consideration of the 3553A factors that, like in Muhammad, this case, it was unpublished, but it was remanded. And because the Court came to an incorrect guideline range based on a career of enhancement that no longer applied. So we ---- But that argument isn't on the face of C-1A. I'm not aware of a policy statement from the Sentencing Commission on that. I assumed if there were any legislative history, somebody would have cited it. So we don't have any of that. You're right. We don't. What we have is the contrast between it and the neighboring provision, C-2. And C-2 has a lot of restraints. So Congress knows how to tell the Court that you're limited here, and in C-2, all you can do is substitute the amended guideline range and leave all other decisions unaffected. That is ---- Exactly. C-2 is totally different. It's an imposition. Judge Niemeyer is correct. And Dillon would apply there. We're talking about C-2. But under compassion relief, you could let the person who has 50 years left release them, correct? Only if they met the extraordinary and compelling circumstances. That's what I'm saying. But the range, as you allude to, is incredible. You're not there to impose a new sentence based on guideline changes. It is what it means if there's a fine and extraordinary situation. And what about the McCoy case? Did we do that in McCoy? We were talking about C-1a? Well, in McCoy, this Court said that the C-2 didn't apply to the C-1. And it relied not only on the language imposed in your sentence, but it said it was the absence in the statute of restricting language, and it was to give Congress's intent, to basically to give meaning to the intent, which was to correct past sentencing disparities. The same thing, compassionate release, Congress passed, said increasing the use and transparency of compassionate release. Increasing the use and transparency, and unlike C-2, there aren't these restrictions on what the Court can consider. That leaves it open. That puts it a lot closer to C-1b than it does to C-2. It might not be the imposition of a new sentence, but the calculation of the guideline range is still an essential part of it. And starting from an error, and, Judge Agee, you said, even if we — if it wasn't laid out as artfully as it could have been, even under plain error analysis, the Court started from the wrong spot. And we know that because the Court's decision, the Court summarized both parties' positions, never said anything about the changed career offender enhancement, and then kept referring back to the original sentencing, which was six years earlier, with a guideline range seven years higher, and said the Court took into consideration many of the same factors at the time of the original sentencing in determining a 132-month sentence was appropriate. Then, again, later it said, this Court concludes that the factors were properly balanced at sentencing, and the defendant's medical conditions and current public health crisis do not alter the assessment. So, clearly, the Court was relying on what it had done at the original sentencing. But, again, we're six years later with a guideline range seven years lower, which is a lot like the cases — I mean, it's a lot like Rosales-Morales and Molina-Martinez when the guideline ranges were actually much closer. It was a 77-to-96-month range. Instead of a 70-to-87, the Court picked a within-guideline sentence of 77 months. How much of your argument relies on an analogy to the First Step Act, Section 404? We think it's clearer than the First Step Act because the language of 3582C1A tells the courts they have to apply 3553A. So in that sense, it's comparable in a lot of ways. It doesn't have the imposed language. That's clear. But it has — it meets the other criteria for why C2 restrictions don't apply. But it's also clearer than the FCA because in Chambers, Collington, and Lancaster, C1B doesn't tell the courts they have to apply 3553A. And that's really the linchpin here is that the statute tells us exactly what — tells courts what they need to do. All right. If that's similar, the Supreme Court has before it the Concepcion case and will address the First Act case argument you're making. We don't think Concepcion really — This is not a First Act case, is it? No, no, no. This is Compassionate Release. This is Compassionate Release, which is different than First Step Act. For all the reasons you said, but for the purposes of correctly calculating the guideline range, it is much closer to the First Step Act cases than the C2 guideline amendment cases. If the Supreme Court decides to take the position of four circuits that have said you can't recalculate the guidelines in that circumstance, you would say it doesn't matter to your case. It does not matter to our case because the statute speaks for itself. The language of the statute tells — It's not a recalculating the guidelines to determine the appropriate sentence. It's just the — it's the much more narrow is to reduce the sentence, to modify the sentence. And you don't need to recalculate to modify. You modify it based, in this case, it's Compassionate Release, which would be modifying it to the sentence or reducing it to time served. And because you're — the argument is he gets out of prison today. But that doesn't require recalculation to justify that. It requires the factors in 3553A. Exactly. But those factors basically focus on you're giving up a sentence that has been imposed, and you're weighing that against the personal factors of medical conditions and whatever it is for the Compassionate Release. But in order to correct — to do the weighing that's required? You're not computing any sentence. You're just reducing the sentence. In other words, it's not imposing a sentence and finding the correct guideline. It's basically just reducing the sentence. If he's got 35 years to go, do we relinquish the 35-year sentence because his personal circumstances justify it? That's the issue on a Compassionate Release. Yes. That is Compassionate Release, but the statute says in order to determine whether or not Compassionate Release should be granted, you have to weigh the 3553A factors. That is clear. Yeah. 3553A-4-1 — A-4 — A-1 says, shall, the Court shall consider the sentencing range as set forth in the Guidelines. That is a given, that you start from the correct Guideline range. Except the very next phrase. It says 3553A as applicable. To the extent? Yeah. To the extent applicable. But to reduce a sentence, to release on time served, doesn't require recalculation of the Guidelines. Well, you're assuming it's time served. Compassionate Release can also just be a sentence reduction. Well, but Compassionate Release is that. They don't — you don't reduce the sentence and leave him in prison. The whole reason for Compassionate Release, these COVID cases, is because the man's exposed to serious consequences if he stays in prison. In some cases — I haven't seen a single COVID case where they say, I want my sentence cut in half. In some cases, they're sent to home confinement, which is still technically — Still. I'm telling you, he's getting out of prison. Okay. Well, in this case, he's actually two years away, which is why it makes a big difference. The Guideline range, when he came to the Court, was seven years lower without the Guideline range. He is now two years away from being released. He's already completed the non-career offender Guideline range, which is why the sentencing weight, the calculation that the Court had to do, was so different than it had been at the original sentencing. And for the Court to say, I already did this weighing, I did it six years ago, that doesn't satisfy what had to be done today. When you — when you apply 3582 today, which Judge Gregory, you know, in your concurrence in Kibble, said you're — you have to look at facts as they exist today. You can't just rely on something that happened years before. Exactly. That's the whole point. I mean, it's — the framework of 3553 is where you start. Exactly. And you have to — when you're looking at — COVID is not the only reason for extraordinary circumstance. Matter of fact, it's wide open. And McCoy said that, where you can look at changes. So it's not recalculating. It's the point where we now know that the law has changed, so that the man is sitting in prison, and if he had reduced it to the point that it went down before, he's already basically served a full sentence. You could analogize that. But he — and he did not do that. The Court did not do that. They didn't look at that. It's clear from the record that the Court didn't do that. It's clear from the record, I think, that the Court didn't truly accept or — that the guideline range didn't apply any longer. The fact that the Court said, I already did this calculation. It already weighs in favor of a 132-month sentence. We are simply asking for a remand to go back to see if the Court, once it's made more clear, would say, no, now that the guideline range is, you know, in the 70-month range versus the 188, I believe that you, having served 80-something months, has already met the factors for need to provide public safety, deter other crimes, satisfy all the other — That's a good argument there, but I don't think you made any of those arguments to the district court. I think — I think we did. The JA, pages 84 and 315 to 316, 315 is in the reply. We said that given that the co-defendant has — sorry. Calculating — used in calculating the career offender enhancement that the government acknowledges would no longer apply. What page? I'm sorry. Top of page 315. It was talking about the previous convictions, and it said they were used in calculating the career offender enhancement that the government acknowledges would no longer apply, and the government did state on JA 251 that the defendant's conspiracy conviction no longer qualifies as a career offender predicate. Right. So the career offender — I mean, those are offered as if you did this, this is what you would find today. Yes. But I'm still troubled by — you never argued to the court this is something you're required to do, the statute requires you to do, 3553A requires you to do that. That's just an argument you didn't make. I believe it's an argument that we made, not as artfully as we could have. But it doesn't change the duty, the court's duty, which is to correctly calculate the guideline range. I see I'm over time. But the court is responsible for knowing the law. Yes. Once you argue the facts, I mean, you don't have to give a tutorial to the court. Yes. I didn't think so. I'm over time, so I will come back on rebuttal. Thank you. All right. Thank you. Mr. Jordan. Your Honor, may it please the court, do I draw on behalf of the United States of America to the extent — Are you willing to remove your mask while you're talking? I'm having a hard time hearing through it. I want to make sure, though, are you comfortable with that? Yes, I am. Oh, I'm sorry. Thank you. Yes, of course. Okay. I appreciate the — I just forgot, Your Honor. Thank you. Okay. All right. Because you had the option. I want to make that clear on the record. I understand, Your Honor. Okay. And with that, knowing that option, you'll take it off? Yes, I do, Your Honor. Okay. Thank you. Go ahead. In addressing the issue of whether the district court erred in determining whether the 3553 factors did warrant a compassionate release, the government believes that the district court's ruling should be affirmed for three reasons. First, the district court was aware of the undisputed guidelines without the career offender enhancement. Second, the district court properly considered the 3553 factors when making its determination. And third, though not dispositive, the standard of review for this issue is abuse of discretion and not de novo. So with that, I want to address the first point with regards to the district court being aware of the undisputed guidelines. The district court summarized in its opinion that the offense was based off of 201.9 grams of cocaine and that the criminal history category was five. That's in joint appendix page 32. The district court also acknowledged the arguments that Mr. Jackson made about the career offender adjustment on the same page. Now, under Chavez-Meza, the district court is not required to explicitly address each argument when it considers compassionate release motions. Like in United States v. High, which this court ruled on, the district court provided significantly more than the court in Chavez-Meza. What Mr. Jackson wants here is for the district court to have written out explicitly all of the arguments it was considered, but that's simply not what the Supreme Court has said. I didn't hear counsel say that. Counsel didn't say that he had to write out every factor. Counsel said that he has to apply the factors that are there, which is the first one on the A. A-4-1. It's nothing about writing them out. We know that. That's not the issue here. The fact is you have to start from the right base, don't you? The extraordinary circumstance is that he's in prison, and we know the law has changed. And therefore, when you look at it in terms of the 3553 Act factors, one is you've got to know where he should be now. And there's no evidence in this record that the court ever did that. And that was the issue before the court, claimed before the court. So it's not about trying to write down. This is not a scrivener's case about writing down every factor. The fact is that is the citiqua norm of the case. Two things, my medical reasons and the fact that I shouldn't be. My sentence is wrong. I'm not a career offender anymore. And that's undisputed as a matter of law. So if you started the 3553 facts, which you must under 3582C1A, then you get to that right there. And if you said that you looked at it, see, there's a difference between you don't have to mention what you looked at, but you do assert that you reviewed it. And there's no way to review this and come up with this right now. It's wrong. I understand that, Your Honor. Well, let's get to it. That's what this case is about. She's not going to argue what you're talking about, writing down everything he's looked at. Your Honor, with regards to the extraordinary purpose of bringing forward the compassionate release, this is unlike McCoy. In McCoy, the defendants brought forward the compassionate release on the basis of the intervening case law, saying that the stacking of 924Cs was no longer appropriate. That's not what happened here. We don't have a case in which Mr. Jackson said to the district court that compassionate release would be based off of intervening case law. The compassionate release is based off of COVID factors. The intervening case law didn't come into account in Mr. Jackson's argument until considering the 3553 factors. And I think the distinction there is significant in that. But that distinction is without a difference because the Court, as you said a few seconds ago, he listed that as one of the factors that's before that was argued. You said that. The Court acknowledged that that was separate from the medical reason for compassionate release. Well, I think when the Court acknowledged that factor, it acknowledged it in the context of 3553. How do you think that is? No, it was summarizing the arguments made before the Court. That's what it was doing. It didn't say anything about really what the analysis was in the 3553. As you said, it didn't have to. But now you're trying to use it. You can't use it as a sword and a shield. It was listing what was before the Court. There were two points, medical and I'm no longer a career offender. The Court verified. You can't change what the Court said. The Court said it was before it. What you don't have is any analysis as to how in the world could you look at these 3553A41 and conclude that it is a correct sentence now. It is not. It is not as a matter of law. I mean, you can't. I mean, my goodness, people are in prison and they've done something wrong. At least it ought to be based on what now the law is what they should serve. That's what's compassionate about it. It's called justice. Your Honor, the government's position is that Judge Chazanow took into account the 3553 factors and mentioned the argument about the career offender no longer being applicable in the context of discussing the 3553 factors. Judge Chazanow also mentioned that she considered many of the same factors as sentencing, but many is the key term there. It was not the exclusive consideration. Judge Chazanow also acknowledged the arguments about career offender guidelines and acknowledged the discussion about Mr. Jackson's infractions while in prison. And with all of those things combined, Judge Chazanow decided that when looking at the 3553 factors that were applicable under Judge Chazanow's discretion, that compassionate release would not be suitable in this instance. But what weight was given, as you ticked off, to the fact that his sentence is now wrong? What, if anything, nothing? Your Honor, I don't think I'm in a position to say the amount of weight given. It was acknowledged. Was it acknowledged as considered? Yes. Okay, well, if it's considered, then what would be the starting point of the sentence? We're looking at it. Don't you have to first find out what the sentence is? See, you've got a reduction within a reduction. If you consider it, the 3553 gets you where it should be. Then you look at whether or not it should be reduced, if at all. But in this case, you didn't need any further reduction because, basically, once you did that, he's really served his time. I mean, this case is really just an incredible type of finding on this fact that you can just ignore what the man's sentence is. He's not a career offender. We know that. Your Honor, with regards to where the judge should start off with guidelines, and the reason why I say the judge was perfectly aware of it and that it was undisputed, this is different from Lancaster, which this Court decided, which, by the way, is a First Step Act case and not under it. That's right. So it's not, it's the opposite here. Right, but in the context of how the Court considered the 3553 factors and the guidelines, in Lancaster the Court didn't have a basis to reconsider the guidelines once the career offender guidelines were removed because that Court had never ruled upon what the appropriate drug quantity would be. That doesn't apply here. In this case, the parties did not dispute that the appropriate drug quantity and established that the offense level was 28 prior to a plea agreement, so 25 after a plea agreement. So once you combine 25 offense level and criminal history category 5, the guidelines have been calculated. The Court acknowledged both of those things in its opinion. It acknowledged the guidelines and the criminal history 5. Wasn't he sentenced as a career offender? Career offender is what put Mr. Jackson at 6. So the Court acknowledged the argument that without the career offender guidelines. That was important, wasn't it? That was important. Yes, Your Honor. And that's what needs to be corrected, doesn't it, when you look at these factors? I mean, it's not rocket science. I mean, you have to do this. I mean, this is important. This involves people's lives in terms of time in prison. I mean, and the Court, doesn't it, in fairness, doesn't this have to be remanded to look at that? Your Honor, the government position that it does not. There's no requirement that the guidelines have to be recalculated. And there's an appreciable distinction between allowed and required. So under the First Step Act, it is allowed and required. But under C-1A, it's just allowed. There's nothing saying that the Court cannot. How do you square that with McCoy? Your Honor, so in the case of McCoy, in which the basis of the compassionate release motion was intervening in case law, this Court decided that the Court was allowed to consider that. As this one is. It was two things. You can't get around that. It was more than just medical conditions as it relates to susceptibility to COVID. It doesn't have to be. It was. It was two parts. Just like McCoy, McCoy, that was the only one. This was one of two. How is that distinguishing, counsel? Your Honor, I. How did you get from McCoy the fact that, oh, you added the medical disorder. You don't have to follow McCoy. Is that logical or any kind of analysis, legal analysis? I'm just asking you, how do you square that? Your Honor, I think you square it because the basis for the compassionate, as the government reads it, the basis for the compassionate release motion is the COVID-19 pandemic. That was one of them. The government positions that that was the only. How can that be your only position? The Court acknowledged that he made that argument. You can't have it both ways. Your Honor. Wait a minute. We ought to be able to agree on some facts. I know that's hard in America. But let's agree on some facts. That he did argue the basis for the relief on the 3582C1A was in a more than just his medical condition and susceptibility to COVID. Is that correct? Can we agree on that? That he raised the question about his sentence that he's no longer a career offender. Can we agree on that? I mean, you know the cases. You mean to tell me you've got to fumble through papers to find that out? I know you don't want to admit it, but it did because it's right there in the record. You can't wish away that. Can I ask my question? Yes, you should, Your Honor. I don't agree with that, and I would like to identify it. You said you don't agree with it? I don't agree that Mr. Jackson proposed to intervene in case law as a basis for compassionate release. Well, what would be the basis for not being a career offender now other than the fact that it's now changed? So, Your Honor. I'm not trying to sound like a trick question. If you're saying that I'm no longer a career offender, implicitly you're saying that something changed, like law. Your Honor, the government's position is that Mr. Jackson presented no longer career offender under the 3553 factor discussion. So, in JA83, it comes under subsection C. And subsection C is titled The Relevant 3553 Sentencing Factors, Warrants, and I won't read the whole title for you, Your Honor. But that's where the discussion comes up, and in that section is where he talks about without the career offender enhancement. And this is on page 84. Mr. Jackson's guidelines range of level 25 after deductions and so forth. It comes in the context of saying Judge Chaz did not add it. If you accept COVID-19 as a basis for the extraordinary and compelling reason, now I want you to consider the 3553 factors. And within that is when he first mentions the career offender guidelines. He does not mention it in the section prior to in which he's just trying to establish the compelling reason. That's why the government position is that though Judge Chaz now acknowledged it, she acknowledged it in the context of the 3553 factors, which is where, I mean, Mr. Jackson presented it. But it is in the context of it. I mean, when you look at the factor under 841, doesn't it talk about the guidelines, what the guidelines are now? Yes, and that's where we get to the discussion of the discretion of the district court when it's considering the applicable 3553 factors. Judge Chaz's discretion was that that guideline was not applicable for her consideration of Mr. Jackson's motion for compassionate release. That's not in the record. You're saying that, but it's no record that she looked at at all. I mean, the district court looked at that at all in terms of factoring for 841. Is that right? Your Honor, I think what's in the record is that Judge Chaz now summarized what the guidelines would be and acknowledged the argument that the career offender provision would no longer apply to Mr. Jackson under the conspiracy count. So I think with that, we have more than we have in Chavez Meza in which the judge simply checked off boxes. We have a case here in which the judge acknowledged these would be the bases. It would be offense level 25. It would be criminal history category 5. And the argument presented is that without the career offender, this would be the basis for the guidelines. So I think we get a lot more here than we do in Chavez Meza, similar to what we got in High, in which the court determined that that was sufficient. Well, High is totally different, man. High wasn't dealing with a change in the law. No, Your Honor. High was not dealing with that. That's different. That's the apples and oranges. Well, Congress decided that this was necessary based on a lot of different things in terms of sentencing. And it was forward to consider reduction. Do you agree that there are no guidelines for when I say guidelines, I should say guardrails? Under 3582C1A, do you think a court could reduce a sentence that's a 50-year sentence and it's been only served five years if they found factors to reduce it to time served? Yes, and that's part of why recalculation of the guidelines is not necessary because the court isn't confined to any sort of recalculation when it's making that determination. Yeah, but it is for the purposes of in terms of in a sense of a rule of lineage. Don't you first have to look at what's present in the state of the law, and then you decide? Now, for example, if we find that the court looked at all of these things and said this and then said, whoa, I don't care if this person is in prison longer than he should be. I still won't give him any relief. That may be a different case, but you don't have that record here that that happened. That's what I'm talking about. You're right. At the end of the day, maybe the court could. That's a good point. But that's a point made on the other side of recognizing what the proper sentence or guideline sentence is now. But that's not evident here, and there's no sandbagging at all because it's in the record that it was presented to the court. But I just don't see how the government makes these arguments on behalf of the United States that a person ought to be in prison. Notwithstanding, we now know that they were sentenced wrong, wrongly. Yeah, and the under Chavez-Meza, the compassion relief motions would not be a plenary resentencing. The court is not in a position where it is required to come up with a resentence, which is what you see in C-1B. This is not an imposition case. It's a reduction case. That's exactly my point, Your Honor. Yeah, but in the reduction, it comes first. Let's get it to the point first where it should be, and then decide whether you want to reduce it. But you can't do that if you've never looked at what's clearly before in terms of the law and the change. This is presented as a change in law. That's the only way it could be if I'm arguing that I'm no longer a career offender. What happened to the rule of lenity? My goodness, it doesn't even exist anymore, basically. It seemed like in federal jurisprudence. Your Honor, I think we would be in a very different position if the basis for the compassion relief motion was the intervening case law and no longer a career offender being applicable. I understand that Your Honor's position is that that was the basis. The government contends that the 3553 factors is the only context. Well, you can see then if it actually was there before the court, they would be fine. Your Honor, I don't think that. You just said that, I think. Did you just say that? No, I said that we would be in a very different position. In a position would be what? That when taken into account in the United States v. McCoy, in which the court, the basis for compassion relief was intervening case law, the district court had a different analysis, and I think the Fourth Circuit expects a different analysis, but that's not what we have here. The basis is COVID-19. The court conceded without really considering the dynamic factors of COVID-19 that the basis had been met and went into the discussion of 3553. So I think to the extent that the opinion of the court takes into account all of that stuff is because it was one of the 3553 factors. But I also note for the court that the court determines the abuse of discretion as pertains to orders and not opinions. And what we have here is a situation in which Mr. Jackson was actually, unlike United States v. McCoy, in which the sentencing of Stack and 924Cs could not exist when intervening case law came into play, and unlike Lancaster in which the sentence needed to be recalculated because it was never initially calculated outside career offender, we have a case in which Mr. Jackson's, the facts that were agreed upon, there was a substance to 841A. The judge is aware of that. Significantly, as this court has noted before, it's the same judge that made the initial sentence and determination, that is looking at the compassion of release motion. And that judge knows that Mr. Jackson, while the plea was to 846 and the conspiracy no longer applies for career offender, there were three substantive acts that could have been pled to had this intervening case law been in place. Well, you're arguing, you're doing just the opposite. You're saying Bayes did a resentencing. Let's say, well, let's see, if you do this right here, you do this, and then let's see whether it really made a difference whether he was a career offender or not. That sounds in resentencing as opposed to this is a reduction here, a reduction in terms of compassionate release that is first considered the argument that I'm no longer a career offender. And you're saying, well, you can bypass that if you could find some way that if you redo this and add it up and look at what could have been charged and what was there in terms of weight and all those things, all the amalgam of all of that, that sounds like resentencing to me. I thought that's exactly what we were not supposed to do here. This is a reduction. I see I'm running out of time. Can I address that question, Your Honor? Well, go ahead, yes. The governor's position is that Judge Chazanel did properly consider the 3553 factors, and our position is that she was aware of what the guidelines would be, but significantly she's not required to have done that. So our position is that she did it when she outlined the offense level and she outlined the criminal history category, but she did not need to do those steps because the language of C-1A directly tracks C-1B. So it is a discussion. Mr. Jackson wants the Court to accept that C-1B is actually closer to C-2. I'm sorry, that C-1A is closer to C-1B. But the governor's position is that if you look at the language of C-1A and look at the language of C-2, as it pertains to may reduce, it tracks the language. It doesn't have impose, as Your Honor pointed out. It says that it may reduce if the 3553 factors, to the extent they are applicable. And the governor's position is that that is the discretion of the Court. And so applicable here because the sentence has now been reduced based on a change in law. That's why it's applicable, clearly. A court would be allowed to make that determination, but the discretion of the district court would allow it to say that it is not applicable for whatever reason. And that's what the district court did here. It actually acknowledged the new guidelines, but it didn't have to. Did the court say here why that's not applicable, the reduction, that he's no longer a career offender? It did not. It did not. I think part of why the court did not, Your Honor, because it was not in contention. I didn't ask you why it did not. It did not, correct? It did not. Can we agree on some facts, counsel? I mean, my goodness, I'm batting zero here. The court did not. Is that right? I know you don't want to say it, but the truth will set you free. I mean, right? The court did not declare anything about why it discounted the fact that he's no longer a career offender. It did not. Your Honor, the governor's position is that the court did not. It did not, did it? It did not. Thank you. If there's nothing else from the court, the government reminds the court that it can affirm on any grounds, and unless there are no further questions, the government will submit what is brief. I appreciate your time. Thank you so much, Mr. Johan. Thank you, Your Honor. Commissioner Donahue. To clarify something that I think the government did agree in the end is that the opinion, which is on pages J.A. 28 through 36, there is not a statement anywhere in there that shows the court acknowledged that he's not a career offender. It's not in there. I've read it a hundred times. I know. I was wondering why counsel was so different. The court summarized each party's arguments on page J.A. 32. It said he argued that the prior offenses were minor. He already served it. He would have served what would have been the non-guideline range. That's not saying that he's not a career offender today, has support. And then it, you know, said what the government argued, and then it summarized and said the court took into consideration many of these factors at the time of the sentencing, again, 2015, and nothing has changed that. The COVID didn't change that. I also want to correct, actually, to be clear, below the appellant could have, should have argued that the change in the career offender status was itself an extraordinary and compelling circumstance, but we did not. We, the extraordinary and compelling circumstance argument was based on COVID and his medical vulnerability. The 3553A factors is where we argued that the fact that he was no longer a career offender dramatically changed the balancing. But I don't think it matters whether it came in the first step or the second step, because — Well, it does, because Congress began that whole section by saying that district courts are not authorized to reduce sentences. And then it makes an exception for the only reason given in this applicable here, extraordinary and compelling circumstance. And so the question is, did the court address all the factors for considering an extraordinary and compelling circumstance? And in doing that, it is directed to consider 3553 factors. But those 3553 factors still are applicable only to the extent they inform the exception, which is extraordinary and compelling circumstance. So here the compelling circumstance is the risk of bad health under COVID. And the court's looking at that as the reason, and it has to consider 3553 considerations as applicable. And it announced over a couple of pages what was applicable and decided. There's no need in that whole circumstance, either by statute or by logic, to recalculate guidelines. I mean, it's so foreign. We have other procedures for doing that. I mean, you know, we have 2255 and all these other types of motions, Rule 35 to correct sentences, First Act. There are other places. But this exception is extraordinary and compelling circumstances based on COVID. That's the motion. And the court in doing that is entitled, not compelled, entitled to consider 3553 factors as relevant. And it did so. And it did not find it necessary to recalculate the guidelines, and there's no mandate that it had to. This would be the first case in the country that does that. If I could just address, the first step is whether or not there's extraordinary and compelling circumstances. The Court here said that it was going to assume without deciding that his health was ill enough that it would warrant reduction. Then move to Step 2, 3553a. I understand that. I understand that. I mean, you want to slice it thin and precise, I'm trying to give you the big picture. In other words, it's totally irrelevant in the whole analysis to say I have to recompute the sentence when I'm exercising a very broad discretion to reduce a sentence based on compelling circumstances. And in doing that, I consider the 3553 factors. We've gone through that on a bunch of cases, McCoy and High and all these other cases that what you go through. But I'm trying to bring the issue back to what's before the Court. And what's before the Court is compelling and extraordinary circumstances based on COVID. And the request is to get out of jail. And so now the question is the Court is in its discretion, entitled to look at 3553 factors as applicable. And the Court went through them and explained them in detail. Starting from the wrong point. It did not commit a single error. It just made those observations. It made observations based on something that existed six years earlier. It didn't find it necessary to recompute the sentence. It was assessing whether the man should stay in jail based on his conduct or whether his COVID should let him out of jail. Right. That's a balancing act. But it said, I already did this balancing six years ago, and I'm not going to redo it. But she relied on facts about that. And the question is, I mean, the sentence was still within the guidelines. I mean, it's within the statute, I mean. It was still a statutory sentence. It wasn't an illegal sentence. Within the statute. But it started seven years higher. We think it makes a difference. And it's an error. I mean, I think the government would agree that the — and finally did — that the Court started from the wrong spot. What was error? What did the Court say in error? The Court said if he was not a career offender, this would have been his guideline range, didn't say he is not today a career offender. I know. But it took it into account, right? No. No. Actually, what the Court took into account was that the predicates were minor, that he had rehabilitated himself, he had community support. On the defense side, the Court also considered his criminal history, the fact that he had served half his sentence and his infractions. That's what the Court said. The Court did not say, I am starting from a different point. But you don't start in this whole calculus. That's the problem. You're presuming there's a recalculation of a sentence. 3553 — This is a reduction of a sentence based on compassionate release. Yes. And 3553a41 says to start the analysis, you have to start from the correct guideline range. It does not. There is nothing that directs the compassionate release analysis to start with the recalculation of the guideline. And it's inconsistent with the whole task given to the Court. Respectfully, we believe that the absence of language telling the Court that it can't means that it does, because the load star. No. It says it may consider as it considers relevant. The Court may find that a man is in very serious condition in prison, and — but he's being treated — it's a borderline case. But he said, this guy's a murderer. He has only served two years of a 30-year sentence. We understand his compassion and his personal circumstances, but we think that that does not outweigh the needs of the community to have him serve his time. Now, that's — that is a type of analysis that Congress envisioned. They authorized the judge to consider 3553 factors, and judges daily — we're getting these daily, these cases — are doing that. That's what's happening. We think it's more than authorizing because it actually directs courts to use 3553A, which the FSA does not. But let me just say the last thing I'm going to say is the guidelines are the load star. The Supreme Court has said that the failure to correctly calculate a guideline range is error. It's assumed it's plain error. That's in sentencing. That's in sentencing. You have to be fair. Yes. That is in sentencing. We're talking about a reduction in sentence, and the Supreme Court made absolutely clear that imposing sentence is a different criteria, and Congress has different criteria than for reduction. And your argument is exactly what they rejected in Dillon. I think it's different because we're saying — It's not different. We're under the very same arguments. You're reciting sentencing requirements to calculate a guideline correctly. That's a procedural requirement. It's imposed on a court. It has to do that. And then he can make his decision on — that is not a requirement on the function of reducing a sentence. And the Court explained that and said you have to stick with the statute and pointed to it. But the last — Well, the function of reducing a sentence is to find out exactly what the sentence ought to be. Yes. And the balancing — the load star of the guidelines is for uniformity and proportionality. The Supreme Court said the guidelines are the load star and they root everything. Well, do they say that on a compassionate release case? No. Of course not. That's a sentencing problem. Come on. It is sentencing, but that tells you that 3582 — 3553a, the weighing, if you start the balancing from the wrong point, the entire thing is invalid. They're not balancing the point. They're not resentencing. They're not determining a new sentence. They're basically saying, should we relieve this man of the sentence that was imposed? And relieving him considers whether or not other people like him being sentenced would already be home. And that is a part of the 3553a factor. That is not a part. And you can't point to any part that a judge has to do. I mean, I understand your argument. You'd just love to have this whole thing be resentenced. No. And you had all kinds of mechanisms to correct it if it's wrong. But the compassionate release motion is just what it says. The court needs to find extraordinary and compelling circumstances, and in doing so, it may weigh, it may weigh the factors under 3553. If we could just go back to the court and see if the court would come to a different weighing based on the correct range, that's all we're asking for. We're not asking for a resentencing. We're just asking for the court to get it, the starting point, right. If the factors weigh out the same, then we're done. Now in these compassionate release cases, you know, there are multiple factors under 3553a. I don't know how many there are if you list them all. We're going to say if you don't go down and tick through every one of those. No, not tick through anything. Start from the correct range, period. The truth of the matter is the courts usually look at the sufficiency of the sentence and whether society still needs his incarceration and factors the safety of the community, that type of thing, because what they're doing is they're overriding a sentence that had already been entered. Which today would not have been entered. That's sort of the critical point. Okay. Thank you. Thank you both for your arguments. We can't come down and greet you as we would like to do in a normal fashion, but please know we appreciate your arguments, both of you. Acquitted yourself very well on behalf of your client and on behalf of the United States. And I wish you well and be safe. Thank you. Thank you.
judges: Roger L. Gregory, Paul V. Niemeyer, G. Steven Agee